ADAMS, Justice.
This is an appeal from a judgment based on a jury verdict in favor of Executive Dress of Mobile, Inc. (“Executive Dress”) in the amount of $10,000 on its counterclaim alleging fraud. The following facts are necessary for a determination of this case:
In February 1959, Springdale Plaza, Inc. (“Springdale”), entered into a lease agreement with Frank H. Stoll, Inc. (“Stoll”), enabling Stoll to lease space in Springdale Plaza in order to operate a men’s clothing store. The lease provided for a minimum rental payment each month as well as for additional rent calculated on a percentage of gross sales. The pertinent clause in the lease reads as follows:
“[I]t is further agreed by and between the said parties that the said Lessee hereby covenants to pay to the Lessor as additional rent each year during the term of this lease, and any extension thereof, a sum of money equal to five (5%) percent of all Gross Sales as said ‘Gross Sales’ are herein defined resulting from the Lessee’s business conducted in or upon the demised premises in excess of One Hundred Sixty-six Thousand, Six Hundred Sixty-seven and No/100 Dollars for each one (1) year period beginning with the commencement of the term of the lease and ending at the expiration of said lease or any renewal or extension thereof.
“Lessee covenants and agrees to pay said additional rent hereunder and to render statements thereof to the Lessor at the office of Lessor’s agent, or at such other place as the Lessor shall from time to time designate by written notice addressed to the Lessee, on or before the 20th day of the calendar month next succeeding each and every year in which said additional rent shall have been realized.”
The lease years ran from February 1 through January 31.
The lease also contained clauses regarding potential default on the lease and acceleration of the amount owed:
“DEFAULT
“Upon the happening of any one or more of the events as expressed below in (a) to (h) inclusive (which said events shall separately and severally constitute a default hereunder at Lessor’s option), the Lessor shall have the right at the option of the Lessor to: (1), annul and terminate this lease, and thereupon re-enter and take possession of said premises; or (2), re-enter and re-let said premises from time to time, as agents of the Lessee, and such re-entry and/or re-letting shall not discharge the Lessee from any liability or obligations hereunder except that net rents (that is, gross rents less the expense of collecting and handling, and less commissions) collected as a result of such re-letting shall be a credit on the Lessee’s liability for rent under the term of this lease. Nothing herein, however, shall be construed to require the Lessor to re-enter and re-let in such event. Nor shall anything herein be construed to postpone the right of the Lessor to sue for rents, whether matured by acceleration or otherwise, but on the contrary the Lessor is hereby given the right to demand, collect and/or sue therefor at any time after default.
*372 “(a) In the event the Lessee should fail to pay any one or more of said installments of rent within ten (10) days after written notice to it from Lessor.
“(b) In the event Lessee removes, attempts to remove or permits to be removed from said premises, except in the usual course of trade, the goods, furniture, effects or other property of the Lessee brought thereon.
“(c) In the event an execution or other legal process is levied upon the goods, furniture, effects or other property of the Lessee brought on said premises or upon the interest of the Lessee in this lease, such execution or other legal process is not removed within thirty (30) days.
“(d) In the event a petition in bankruptcy or a petition under the Bankruptcy Act, or any amendment thereto, is filed by the Lessee or the Lessee is adjudged a bankrupt.
“(e) In the event an assignment for the benefit of creditors is made by the Lessee.
“(f) In the event of the appointment of a Receiver of Lessee’s property.
“(g) In the event the Lessee, before the expiration of said term, without the written consent of the Lessor, vacates said premises or abandons the possession thereof, or uses the same for purposes other than the purposes for which the same are hereby let, or ceases to use said premises for the purposes herein specified.
“(h) In the event Lessee violates any of the other terms, conditions or covenants on the part of the Lessee herein contained, and such violation shall continue uncorrected for a period of thirty (30) days after written notice to Lessee.
“ACCELERATION
“Upon default, or upon the termination of this lease or re-entry upon said premises for any one or more of the causes set forth above, or upon any termination of this lease or re-entry of said premises, the rents hereunder for the entire rental period and other indebtedness, if any,
payable under provisions hereof, shall be and become immediately due and payable and without regard whether or not possession of the premises shall have been surrendered to or taken by the Lessor.”
The lease was renewed several times by the parties; however, in 1985, Stoll, due to financial difficulties with its store, began negotiations with Gen. Robert E. Chapman of Executive Dress for Executive Dress to assume Stoll’s lease. That lease was assumed on August 7, 1985, with the knowledge and consent of Springdale Plaza, and with the following changes to the lease:
“In lieu of the additional rent specified in the original lease, effective with the lease year starting February 1, 1965, Lessee is to pay to Lessor as additional rent that amount by which four and one-half percent (4½%) of gross sales (as defined in the lease) exceeds the minimum rental paid by Lessee to Lessor during each lease year.”
The record indicates that prior to the assumption of the lease, however, Chapman had notified a Springdale executive, Spenser Frost, of Chapman’s desire to assume the lease with a “clean slate.” Therefore, he requested notification of Stoll’s indebtedness to Springdale. On July 12, 1985, a letter was written to Stoll’s attorney and subsequently passed along to Chapman, which purported to answer his questions regarding any amounts left owing by Stoll. The letter, in pertinent part states as follows:
“Stoll’s, Inc. [sic] has failed to pay July minimum rent, the percentage rent, and other charges. July minimum rent is due in the amount of $1208.33. Also due are common area maintenance charges of $72.50, and Stoll’s pro rata share of expenditures for store front renovations in the amount of $33.33. The percentage of gross sales rent due is $6,423.72, with interest at the rate of 10% from May 25, 1985. Interest is accruing on this amount at the rate of $1.76 per day.
“The lease agreement also provides for an attorney’s fee for the collection of the above amounts. The total amount presently owing under the lease as of this *373 date is $7,817.08, plus an attorney’s fee of $1,954.27.”
Chapman agreed to pay the $7,817.08 owed by Stoll, but refused to pay the $1,954.42 in attorney fees, and in August Executive Dress assumed the lease.
This controversy arose in February 1986, when Springdale notified Chapman that the percentage rent mentioned in the lease was due. Springdale’s calculations included those months from February 1985 through July 1985, prior to Executive Dress’s assumption of the lease in August 1985. Chapman contends that in its letter of July 12, 1985, Springdale knowingly misled him into believing that the sum of $7,817.08 allegedly owed by Stoll and subsequently paid by Chapman included the percentage rent, owed by Stoll from February 1985 until Executive Dress’s assumption of the lease. Springdale’s argument, on the other hand, is that the percentage rent paid by Chapman was the percentage rent owed by Stoll for the previous year, i.e., the lease year that ended January 31, 1985.[1]
In August 1986, Springdale filed suit against Executive Dress, alleging breach of contract. Executive Dress, in turn, answered and filed a counterclaim, alleging that Springdale had misrepresented the amounts owed by Stoll. The case was tried before a jury after the trial judge denied Springdale’s motion for summary judgment. The trial judge also refused to grant Springdale’s motion for directed verdict, as well as its motion for judgment notwithstanding the verdict following the jury award of $10,000 to Executive Dress on its counterclaim alleging fraud. The jury found for Executive Dress on Spring-dale’s complaint alleging breach of contract. Springdale argues that the court erred in denying its motions for directed verdict or JNOV.
From the evidence, it is clear to us that while the percentage rent money sued for may have been due in February 1986, Springdale, due to Stoll’s default on the lease, had the option to accelerate any payments owed by Stoll. The jury could have interpreted the letter of July 12, 1985, to have been a representation that that very thing had been done. Springdale argues that Stoll’s percentage rent would have been due through the entire month of July 1985; therefore, it contends that Executive Dress could not have assumed that the percentage rent mentioned in the July 12 letter was rent accelerated from February 1985 through July 31, 1985.
We are of the opinion that the trial court did not err in denying Springdale’s motion for directed verdict.
We do not find the verdicts to be inconsistent, as argued by Springdale. Springdale sued Executive for breach of contract with respect to failure to pay percentage rents due under the lease. Executive defended the breach of contract claim brought by Springdale by asserting, among other things, that it was estopped from claiming any further obligation, that any debt owing was void for want of consideration or on account of an accord and satisfaction, and that it was fraudulently induced to enter the contract.
Executive counterclaimed, alleging breach of contract for Springdale’s failing, as agreed, to correctly state the amount of back rent due from Executive’s assignor prior to Executive’s agreeing to the assignment and alleging fraud, claiming that Springdale had misrepresented the amount of rent due prior to Executive’s taking over the lease.
The jury found for Executive on Spring-dale’s claim and for Executive on its counterclaim. It is unclear what the basis for that holding is; that is, it could have resulted from a failure of proof by Springdale or from the establishment of one of the affirmative defenses asserted by Executive. Springdale contends that the finding of no contract liability means that Executive suf *374 fered no compensable loss. While it is true that the amount of the back rent can not be the source of damage, the rule is that even if there is “only a technical invasion of the plaintiffs rights, nominal damages may be awarded.” C. Gamble, Alabama Law of Damages § 3.1 (2d ed. 1988). “Every wrong imports a damage and where none other is proven and the evidence shows a clear breach of duty, nominal damages are always recoverable.” Blackburn v. Alabama Great Southern R.R., 143 Ala. 346, 348, 39 So. 345, 345 (1905) (quoting Adams v. Robinson, 65 Ala. 586 (1880)). An award of nominal damages is sufficient to support an award of punitive damages. Executive’s counterclaim for fraud alleged that Springdale acted intentionally and knowingly. The jury was instructed that they could award punitive damages.
Therefore, the verdicts are not inconsistent, and the judgment should be affirmed.
Por the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES, HOUSTON and KENNEDY, JJ., concur.

. Springdale contends that the percentage rent from February 1985 through July 1985 did not actually come due until February 1986. Therefore, it says, Stoll did not "owe” that portion of the rent prior to Executive Dress's assumption of the lease. The only possible interpretation, Springdale argues, is that the percentage rent that was paid by Chapman was that rent that was due from the previous year.